# NATIONAL SECURITY COUNSELORS

1200 SOUTH COURTHOUSE ROAD
SUITE 124
ARLINGTON, VA 22204
———

TELEPHONE: (301) 728-5908
FACSIMILE: (240) 681-2189

KEL MCCLANAHAN, ESQ., EXECUTIVE DIRECTOR (admitted in NY, DC)
    EMAIL: KEL@NATIONALSECURITYLAW.ORG
BRADLEY P. MOSS, ESQ., DEPUTY EXECUTIVE DIRECTOR (admitted in IL, DC)
    EMAIL: BRAD@NATIONALSECURITYLAW.ORG

31 May 2010

James M. Kovakas
Freedom of Information/Privacy Act Officer
Civil Division
U.S. Department of Justice
Room 7304, 20 Massachusetts Avenue, NW
Washington, DC  20530-0001

Re:    FOIA Request – FOIA/PA declarations

Dear Mr. Kovakas:

    Thank you for the opportunity to provide further support for our request for a public interest fee waiver for the request submitted on 10 May 2010.

    In our telephone conversation, you expressed the concern that release of these records, which could also be found in court files in the districts in which the cases were held, would not contribute significantly to public understanding.  From my perspective, your concern stemmed from two primary beliefs: 1) because these records can be found in public court files, they are "available on the public record;" and 2) reading these declarations and *Vaughn* indices would not allow us to improve the public's understanding of the way the agencies in question implement FOIA.  I will address these points separately.

    The geographic distribution of these records makes it extremely unlikely that even if a requester were able to determine which districts held court records, he/she would be able to secure copies of the relevant documents.  For instance, in the D.C. District Court, if a court document is not available in PACER for whatever reason, the requester *must* personally visit the courthouse or archive and review the court records himself to select documents for duplication, unless he is willing to pay for the duplication of the entire court record.  The clerk's office refuses as a matter of policy to perform any searches for particular documents in a case file (as is their right).  We believe that availability on PACER or in courthouses across the country is inferior even to availability in an agency's FOIA reading room, especially when the geographic spread of the court records is considered compared with the centralized files of the Federal Programs Branch.  In order to perform any meaningful comparative analysis of these records, especially with respect to inter-district comparisons, it is necessary to obtain records from across

McClanahan Decl. - Ex. 2

the country, which is not financially feasible for any single requester, especially a non-profit organization.

The D.C. District Court has held that availability in an agency's reading room is not sufficient reason to find that the records were "on the public record." *See Fitzgibbon v. Agency for Int'l Dev.*, 724 F. Supp. 1048, 1051 (D.D.C. 1989) (requester's publication of the information sought would be much more likely than the agency's reading room "to contribute significantly to public understanding" of agency practices); *see also Coal. for Safe Power, Inc. v. Dep't of Energy*, No. 91-0078 (D.D.C. Sept. 10, 1991) (fee waiver granted to non-profit public interest organization even though document requested was available in agency's public reading room). To put it simply, if availability in a public reading room is not sufficient to qualify as "on the public record," then distribution in courthouses across the country is definitely not sufficient compared to our stated intent to make the records available in their raw form in one convenient place and incorporate them into our published research on the matter.

The second part of your concern is based, with all due respect, on your opinion of the value of the material requested. You argued that the most that the public would learn from these records was that agencies made the arguments and claims in their declarations that were calculated to win the cases, which "everyone knows already." At least one court that has carefully considered this issue has held that "neither the statute nor the Department of Justice guidelines permit an agency to make a *de novo* determination as to the intrinsic value of the subject matter on which the information is requested." *Ettlinger v. FBI*, 596 F. Supp. 867, 875 (D. Mass. 1984). While the agency may evaluate "whether the subject matter is one in which there is some objectively demonstrable interest by some segment of the public," it may not "substitute its own judgment for that of an objectively reasonable judgment by the requester as to the scholarly, historical or academic value of the particular subject of the requesters' research." *Id*. The *Ettlinger* court exhaustively reviewed cases demonstrating that "courts have consistently overturned agency denials of fee waivers when requesters have made a legitimate, objectively supportable showing of using the requested information for scholarly research into political and historical events." *Id*. We believe that these declarations and *Vaughn* indices will tell far more than "the simple fact that the agencies made the best legal arguments they could," and that at the very least the raw statistical data mined from these records regarding exemptions would prove valuable to any person attempting to model the respective agencies' FOIA implementation procedures, policies, patterns, and practices.

Thank you again for this opportunity to address your concerns. If you wish to discuss this request, please do not hesitate to contact me.

Sincerely,

Kel McClanahan
Executive Director